931 So.2d 184 (2006)
Eddie Levoid FENCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D05-1463.
District Court of Appeal of Florida, Fifth District.
June 9, 2006.
*185 James S. Purdy, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
The appellant, Eddie Fencher ("Fencher"), challenges his convictions for sexual battery with a deadly weapon or physical force,[1] burglary of a dwelling with an assault or battery with a firearm,[2] and kidnapping with intent to commit a felony.[3] He was sentenced to life on each count, concurrently. The court also imposed concurrent ten-year mandatory minimum sentences for use of a firearm in two of the charges. Fencher contends the trial court erred when it allowed the admission of a rape kit into evidence without the testimony of the nurse who collected the samples and by limiting his counsel's closing argument. Fencher's attorney attempted to argue that a State's witness had been convicted of a crime, which affected his testimony concerning the chain of evidence. We find no merit to his arguments and therefore affirm his convictions and sentences.
At trial, the 49-year-old victim testified she lived in River Walk Apartments in Orange County. She said she was on her back porch, bringing in a chair, and smoking a cigarette when she was approached by a black male, about 5'7" to 5'9" tall and 150 pounds with a handgun, who backed her into her apartment. Although she gave him money, he tied her hands behind her back, duct-taped her mouth, tied her ankles and sexually assaulted her. The victim was taken to Orlando Regional Medical Center by Detective Mann. At ORMC, Nurse Diane Dickman took rape kit samples from the victim's vaginal area. The samples were then sealed, signed, and given to Detective Mann, who testified he took them to the Orlando Police Department for testing by the Florida Department of Law Enforcement laboratory.
Fencher argues that the court erred in admitting the rape kit into evidence without the testimony of Nurse Terri Dickman, who obtained the samples, but was unavailable to testify at trial. He contends that the rape kit was testimonial evidence, and its admission without the *186 nurse's testimony violated his right of confrontation under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree.
Though Nurse Dickman did not testify at trial, Nurse Barbara Hanson, a certified nurse midwife and advanced registered nurse practitioner at the Sexual Assault Treatment Center, did testify. She testified that she had been at the center for three years and described the consent forms the patient/victims must sign, the collections procedure, and the protocol for collecting and preserving samples. Hanson, who routinely took such samples and had testified on many occasions as to the center's records, testified that the records from the rape kit examinations are routinely generated and that she had seen hundreds of reports generated by Dickman. She knew Dickman and recognized her handwriting on the rape kit. Hanson stated that Nurse Dickman previously worked at Seminole Hospital, but could not be found. She identified the rape kit and testified that it did not appear to have been tampered with.
Detective Mann testified that he took the victim to the hospital and gathered the rape kit from Dickman to deliver to the police department for evidence storage and FDLE for testing. Pertinent to the second issue we will discuss, Mann admitted that he had been convicted of a felony and that he asked the prosecutor to help him out on his own criminal case. Detective Haas testified that he took a saliva sample from Fencher and explained the department protocol concerning taking, sealing, and delivering the sample to FDLE for later testing.
The FDLE forensic scientist expert who performed the serological exams and DNA analysis on the subject rape kit identified the State's exhibit and satisfied chain of custody concerns. He testified that the package was sealed and had not been tampered with when he received it. He testified at length concerning the tests he performed on both the rape kit and the saliva sample from Fencher and opined that he could not exclude Fencher as a contributor to the DNA found on the victim's vaginal swabs. Based upon his report, the frequency of occurrence for the observed match was one in 580 quadrillion African-Americans. The defense voire dired the witness before he was accepted as an expert and had ample opportunity to cross-examine him.
We conclude there is no merit to Fencher's arguments. For the record to be admissible under the business record exception to the hearsay rule, it must be shown that the record was (1) made at or near the time of the event recorded; (2) by or from information transmitted by a person with knowledge; (3) kept in the course of a regularly conducted business activity; and (4) that it was the regular practice of that business to make such a record. § 90.803(6)(a); Brooks v. State, 918 So.2d 181, 193 (Fla.2005). Either the affidavit of the technician who actually performed the tests or the affidavit of the custodian of the blood test report is required to establish a foundation for admission of the report as a hearsay exception under section 90.803(6), Florida Statutes (2000). Dutilly v. Dep't of Health & Rehabilitative Servs., 450 So.2d 1195, 1196-97 (Fla. 5th DCA 1984). In this case, Nurse Hanson testified to meet this requirement.
Fencher argues that the rape kit was testimonial evidence subject to the Confrontation Clause even when admitted under the business record exception to the hearsay rule. See, e.g., Johnson v. State, 929 So.2d 4 (Fla. 2d DCA 2005) (holding that admission of FDLE lab test introduced through supervisor of unavailable individual who actually performed lab tests *187 was testimonial hearsay even if admitted as a business record and violated defendant's right of confrontation), rev. granted, 924 So.2d 810 (Fla.2006); Belvin v. State, 922 So.2d 1046, 1054 (Fla. 4th DCA 2006) (holding that, in DUI proceeding, portions of breath test affidavit pertaining to technician's procedures and observations in administering the breath test constituted testimonial evidence, and admission violated defendant's right of confrontation under Crawford). Those cases are inapposite to the proceedings in this case.
Here, the FDLE forensic scientist who actually performed the tests testified at length and was subject to cross-examination about his qualifications, chain of custody, procedures, serological results, and statistical analysis of the DNA samples. Not only did Fencher's attorney cross-examine the witness, he moved to have one of the slides used during the witness' testimony removed because he argued the slide was prejudicial to his client because it impliedly shifted the burden of proof from the State to the defense. The trial court granted the motion. Thus, through cross-examination of the scientist who performed the DNA analysis, Fencher's right of confrontation was fully satisfied. Nurse Hanson and the other witnesses completely satisfied all of the other requirements and chain of custody concerns relative to the rape kit. Because Dickman merely procured the samples and did not test the DNA material, her unavailability need not be scrutinized under Crawford.
Before closing argument, the State moved in limine to prohibit defense counsel from implying that Detective Mann's convictions have any significance with respect to evidence tampering. The State argued and the trial court agreed that his sexual battery convictions had nothing to do with evidence tampering. Though he handled the rape kit as part of the chain of custody, there was no suggestion that he had tampered with the evidence, nor was there any evidence that the rape kit had been tampered with. The court granted the motion in limine, pointing out that it had permitted the earlier questioning for the purpose of impeachment, but that it would be misleading to the jury to suggest that a witness's felony conviction related to evidence tampering.
Courts allow attorneys wide latitude to argue to the jury during closing argument. Breedlove v. State, 413 So.2d 1, 8 (Fla.1982). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. Thomas v. State, 748 So.2d 970, 984 (Fla.1999). Controlling comments to the jury, however, rests within the trial court's discretion, and a reviewing court may not interfere unless an abuse of discretion is shown. Franqui v. State, 804 So.2d 1185, 1195 (Fla.2001). Fencher has not shown any abuse of discretion.
Accordingly, we AFFIRM Fencher's convictions and sentences.
GRIFFIN and MONACO, JJ., concur.
NOTES
[1] § 794.011(4), Fla. Stat. (2004).
[2] § 810.02(2)(a), Fla. Stat. (2004).
[3] § 787.01(1)(a)(2), Fla. Stat. (2004).